CERA and another, Respondents, vs. CONSOLIDATED WATER POWER COMPANY, Appellant.

*October 12, 1937—January 11, 1938.*

For the appellant there were briefs by *Fisher, Cashin & Reinholdt* of Stevens Point and *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Ray B. Graves*.

*W. E. Atwell* of Stevens Point, for the respondents.

The following opinion was filed November 9, 1937:

ROSENBERRY, C. J.   Plaintiffs' land is located seven miles north of the city of Stevens Point and adjacent to the Wisconsin river.   Since 1919, the defendant has maintained a dam at Stevens Point.   In 1926, a controversy arose between the plaintiffs and the defendant with respect to the flooding of plaintiffs' lands by reason of the maintenance of the dam.   A settlement was agreed upon, and the plaintiffs conveyed to the defendant certain riparian and flowage rights.   The operative words of the conveyance were:

"The right to set back, flow and flood waters from the Wisconsin river by the operation of the dam at whatsoever height the same may be.maintained, owned by grantee across the Wisconsin river, in the city of Stevens Point, Wisconsin, on [describing the lands] as indicated and shown by the red shading on the map hereto attached, marked Exhibit 'A' and made a part hereof."

Exhibit "A" is reproduced herewith.

Until the fall of 1931, the crest of the dam at Stevens Point was maintained at an elevation of 102.5.   Under authority granted by the railroad commission (now public service commission), the dam was raised three and one-half feet in the fall of 1931.   Thereafter plaintiffs' lands other than those shaded red on the map attached to the deed were flooded, the plaintiffs claim by reason of the increased elevation of the dam.   The defendant, on the other hand, claims

that the conveyance made in 1926 authorized the defendant to maintain its dam in the city of Stevens Point at whatsoever height the defendant might be authorized to maintain it and granted the defendant the right to flood the plaintiffs' lands accordingly. The plaintiffs contend, and the finding of the jury sustains their contention, that prior to the fall of 1931, only that part of the land shaded red was overflowed, that after the height of the dam was increased, a considerable part of plaintiffs' lands were overflowed in periods of high water, doing great damage to the plaintiffs' premises. The part shaded red was a part of what was known as Willow Creek Bottoms, which were bounded on the north and east by a bank. The plaintiffs contend that the deed given by them in 1926 authorized the flowing of the shaded lands by setting the water against the bank, but did not authorize the flowage of lands above the brow of the bank. The defendant claims that its right to flow the plaintiffs' lands was unlimited if the dam it maintained was lawful.

The decision in this case turns upon the construction to be placed upon the operative words of the conveyance executed in 1926. If the conveyance had stopped with the description of the lands, it is obvious that the contention of the defendant would be correct. When, however, the words "as indicated and shown by the red shading on the map hereto attached, marked Exhibit 'A' and made a part hereof" were inserted, it is apparent, as the trial court held, that it was the intention of the parties to limit the extent of the grant. If the language of the deed be not so construed, then the words following the description perform no office whatever and are meaningless. If the right of the defendant to flow plaintiffs' lands was unrestricted or unlimited there was no need to indicate what was to be flowed by shading of a part of the lands upon Exhibit "A" red,—they might all be flowed. What the plaintiffs granted by the deed of 1926 was

the right to flow the portion shaded on the map. The plaintiffs claim no damage for the flowage of their lands below the brow of the bank. Their claim is for damage done by flooding of their lands above the brow of the bank.

Upon the trial the parties stipulated that the—

"action have the same status in the circuit court as if the same was being tried on an appeal from the award of commissioners [in condemnation proceedings], the verdict in said action and the judgment therein to have the same effect and force as a verdict and judgment on such appeal, to wit— to have the effect of an award to the plaintiffs for full damages for the permanent taking, if any, of his lands for the purposes of the defendant corporation."

The defendant contends that damages awarded by the jury are excessive and not supported by the evidence. In view of the effect of the judgment, it is considered, after a careful examination of the record, that the defendant's contention in that regard cannot be sustained.

The defendant further contends that the court erred in computing interest on the judgment from August 31, 1931. The damages assessed were the difference between the value of the premises before and after taking, so that the date from which interest should be computed is the date of taking. The evidence is that the land was first flooded and therefore first taken in the fall of 1931. There is some evidence that fixes this date in late August or early September. This question does not appear to have been raised directly upon the trial, at least it was not raised by defendant's motion for a new trial. Under the facts disclosed by the record it cannot be said that the trial court was in error in adopting August 31, 1931, as the date of taking.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 11, 1938.